1   SUSAN LOMAS
    2528 Kendall Street
2   La Verne, CA 91750
    E-Mail: Souxsie@prodigy.net
3   Telephone: (323) 533-5242
    Fax: (310) 734-6252
4

5

6

7           **THE UNITED STATES DISTRICT COURT**

8           **CENTRAL DISTRICT OF CALIFORNIA**

9

10

11  **SUSAN LOMAS, an individual**      )   Case No. 2:10-BK-38296-ER
                                         )
12  Plaintiff,                           )   **COMPLAINT FOR:**
                                         )   **(1) FOR REFORMATION OF NOTES**
13                                       )   **      AND DEEDS OF TRUST;**
                                         )   **(2) QUIET TITLE;**
14          vs.                          )   **(3) PREDATORY LENDING PRACTICES;**
                                         )   **(4) DECLARATORY RELIEF;**
15  **BANK OF AMERICA, A NATIONAL**      )   **(5) INJUNCTIVE RELIEF;**
    **ASSOCIATION, as successor by**     )   **(6) REQUEST FOR AN EVIDENTIARY**
16  **merger to La Salle Bank**          )   **      HEARING and;**
    **National Association, as**         )   **(7) JURY DEMANDED PER THE 7TH**
17  **trustee for the Certificate C-**   )   **      AMENDMENT.**
    **BASS Mortgage Asset-Backed**       )
18  **Certificate, Series, 2006-CB-**    )
    **7and; DOES 1 – 20, inclusive**     )
19          Defendants.                  )
                                         )
20                                       )
                                         )
21                                       )
                                         )
22  _____  )

23      COMES NOW THE PLAINTIFF in pro per, who hereby files this

24  Complaint and alleges as follows:

25      Plaintiff hereby reserves the right to amend this complaint

26  if and when Plaintiff learns more facts and/or issues in regards

27  to the actions or in-actions of the Defendants.

28
                            COMPLAINT
                                1

**GENERAL ALLEGATIONS AS TO ALL CAUSES OF ACTION TO ALL DEFENDANTS:**

1.   At all times herein mentioned, Plaintiff, Susan Lomas, is residing in the County of Los Angeles and is the owner in possession of the subject real property and family home located at 2528 Kendall Street, La Verne, CA 91750 (hereinafter "the subject property") described as: Lot 105 of Tract 29007, in the City of La Verne, County of Los Angeles, State of California as per map recorded in Book 715, Page(s) 87 and 88, of Maps of the Office of the County Recorder in the county of Los Angeles.

2.   Defendants, BANK OF AMERICA, a national association, as successor by merger to La Salle Bank National Association, as Trustee for the C-BASS Mortgage Asset-Backed Certificate, Series, 2006 CB-7, are all purported entities doing business in the State of California and/or their agents, employees or associated one way or another with these entities in a concerted effort and scheme to intentionally cloud the title of the Plaintiff as will be further defined.

3.   DOES 1 - 20 inclusive are all unknown Defendants who are/or may be the true note holders of account for the loan number of 0094286994-9502 in due course making them the lawful true beneficiary(s) and creditor(s) of the Note and the Deed of Trust.  Plaintiff is ignorant to the true names and full capacities of defendants sued herein as DOES 1 - 20, but they all are the true investors and creditors who are alleged to hold the full interest (if any) in the Note in due course from a pool of investors and are or were the only parties allowed by law to give

COMPLAINT
2

1  authority to modify or foreclose on the loan.  Plaintiff

2  therefore must now sue these defendants by such fictitious names.

3  Plaintiff will amend this complaint to allege their true names

4  and capacities IF and when they are ascertained. Plaintiff is

5  informed and believes and thereon alleges, that each of these

6  fictitiously named Defendants, claim some right, title, estate,

7  lien or interest in the hereinafter described property and/or the

8  deed of trust and note which is/are adverse to plaintiffs' title;

9  and her claims, and each of them now constitute a cloud on the

10  Plaintiff's title to that property.  Plaintiff is also informed

11  and believe that the defendants sued herein as DOES 1-20 may be

12  or may not be the true owners of all or part of the interest of

13  the Promissory Note now either being held by them in trust or

14  being held by an unknown defendant(s) who has no lawful financial

15  interest in the Promissory Note and /or in the Real Estate named

16  in this suit for quiet title, since the Promissory Note was

17  divorced (bifurcated) from the Deed of Trust at the time it was

18  securitized.  Since the real party(s) of interest (DOE

19  Defendants) are/is still unknown after a due diligent

20  investigation by the Plaintiff, these defendants will, and must

21  be served and notified of this suit by lawful publication

22  according to the provisions found in the California Code of Civil

23  Procedure.

24      4.   Plaintiff is informed and believe and thereon allege

25  that, at all times herein mentioned, each of the Defendants named

26  in

1  this suit herein above was acting as an agent and/or employee

2  and/or in concert of each of the remaining Defendants and was at

3  all times acting within the purpose and scope of such agency and

4  employment.

5       5.    Plaintiff is, and at all times herein mentioned, the

6  lawful owner and entitled to possession of the property located

7  at 2528 Kendall Street, La Verne, CA 91750, the *common address*

8  *for the property in question and is also now* entitled to full

9  possession of the property.

10

11      6.    Plaintiff is informed and believes and thereupon

12  alleges that each of the Defendants have been informed they need

13  to answer or have answered certain questions according to the

14  law, written by the Plaintiff in a 'qualified written request'

15  and a 'written notice of dispute' under Federal and State law,

16  because the Plaintiff has been unable to ascertain the true

17  identity of the real Defendant(s) who actually funded the alleged

18  loan and of the true identity(s) of the individual(s) in the pool

19  of investors who purchased all of the right, title and interest

20  to the Promissory Note.  Plaintiff now contends this/these

21  note(s) has/have been fully satisfied by the payment of bailout

22  monies, TARP funds, insurance payouts or by operation of law

23  because of the Defendants failure to comply with the law, which

24  thereby extinguished all of the right, title and interest they

25  may have had.

26

27      7.    Plaintiff is informed and believes and thereupon

28  alleges that Defendants, and each of them, still claim some type

COMPLAINT
4

1  of an interest in the Note(s) and or Property adverse to

2  Plaintiff herein.  However, the claims of said Defendants are now

3  without any right whatsoever, and said Defendants now have no

4  legal or equitable right, title, claim, or interest in said

5  Note(s) and/or Property.

6      8.    Plaintiff therefore seeks a declaration or order that

7  the title to the subject property is/be vested in her alone and

8  that the Defendants herein, and each of them, be declared to have

9  no estate, right, title, claim or interest in the subject

10  property and that said Defendants, and each of them, be forever

11  enjoined from asserting any estate, right, claim, title or

12  interest in the subject property adverse to Plaintiff herein.

13

14      9.    Plaintiff hereby claims to be the owner of certain real

15  property, namely: 2528 Kendall Street, La Verne, CA 91750

16      10.   The basis of Plaintiff's title is an Individual Grant

17  Deed number 06 0634452 and recorded March 24, 1996 in the

18  Official Records of the County of Los Angeles California.

19      11.   Plaintiff made monthly payments to **AMC, LLC (Argent**

20  **Mortgage Company, LLC)** then to **Litton Loan Servicing, LLC** until

21  it was learned that the appraisal for the value of the Said Real

22  Estate was not correct (was fabricated) but was in fact

23  misleading and caused the true value of the Said Real Estate to

24  show a much higher value than it's true value, that being much

25  lower.

26

27      12.   Plaintiff sent 'qualified written request' letters to

28  Defendant BANK OF AMERICA, A NATIONAL ASSOCIATION, as successor

1  by merger to La Salle Bank National Association, as trustee for

2  the C-BASS Mortgage Asset-Backed Certificate, Series, 2006-CB-7;

3  QUALITY LOAN SERVICING, a California Corporation and; ARGENT MORTGAGE

4  COMPANY, LLC, containing many questions that they were required or

5  compelled to answer by law because of the fear she had concerning

6  Predatory Lending.  These same letters also contained a written

7  notice of dispute under the Federal Fair Debt Collection

8  Practices Act (FDCPA).

9

10      13.   Defendants failed to fully and lawfully comply with

11  Plaintiff's Qualified Written Request letters and also failed to

12  fully and lawfully comply with the Federal Fair Debt Collection

13  Practices Act.

14      14.   Plaintiff continued the investigation of named

15  Defendants to ascertain what interest, if any, they have in the

16  Said Property or the Said Notes to which all of them that were

17  contacted stated that they did not have any interest in the Said

18  Property and/or the Said Notes.

19      15.   Plaintiff then wrote and sent a confirmation letter

20  informing the Defendants of the telephone investigation to which

21  none of them ever responded.

22

23      16.   ARGENT MORTGAGE COMPANY, LLC, and perhaps the

24  Defendants associated with them, originated the documents known

25  as the Deed of Trust and the Promissory Note for loan number

26  060634453 and used undue influence and coercion in their actions

27  to force the Plaintiff to sign the Note which said: "For a loan

28  that I have received".  The Plaintiff was forced to sign this

1  note even though loan funds had not been received from these
2  Defendants before or at the time they allegedly signed the
3  documents.

4    17.  "Pretend lender" ARGENT MORTGAGE COMPANY, LLC, and
5  perhaps the Defendants associated with them, originated the
6  documents known as the Deed of Trust and the Promissory Note for
7  the loan number of 060634453.  The Deed of Trust listed the
8  Defendant ARGENT MORTGAGE COMPANY, LLC as the "Lender", but the
9  Plaintiff now has learned that ARGENT MORTGAGE COMPANY, LLC did
10 NOT lend any money or funds to her as the Deed of Trust wrongly
11 states.  Plaintiff has now learned that ARGENT MORTGAGE COMPANY,
12 LLC was just the "originator" or "pass-through" of the paperwork
13 and unlawfully transferred it's misrepresented beneficiary status
14 as "nominee" (whatever that means) to Defendant **LA SALLE BANK**
15 **NATIONAL ASSOCIATION, AS TRUSTEE FOR THE CREDIT-BASED ASSET SERVICING AND**
16 **SECURITIZATION (C-BASS) MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES**
17 **2006-CB7** from the real creditor(s) or investors who are alleged
18 to have funded the loan without the authority of the real
19 creditor(s) and/or investors who is/are alleged to have funded
20 the loan (if funded at all).

21   18.  Plaintiff was lulled into a false sense of security by
22 the lack of full disclosure. Plaintiff has now learned that the
23 true lender (if any), it being a person or entity who lends money
24 for temporary use on condition of repayment with interest, might
25 really be the investment banker in a securitized asset backed
26 security, or the entity that was created by the investment banker

COMPLAINT
7

1   in which bonds or shares of asset backed securities were sold.

2   This lack of complete disclosure was the proximate cause of harm.

3   The "lender" would thus be defined by "substance over form" and

4   probably doesn't/didn't or wouldn't qualify under the laws of the

5   State of California as a securities transaction and probably did

6   not qualify as a lender under the banking and finance laws

7   either.  The "real lender" may also have avoided "intangible

8   taxes" thereby subjecting itself to multiple counts of criminal

9   and civil liability, interest and penalties in addition to the

10   taxes due.  This will be proven by discovery.

11

12       19.    Plaintiff has since learned that the Said Note has

13   been "Securitized" and that the "securitization" on Said Note

14   (and Said Property) started before the Plaintiff was induced by

15   misrepresentation into signing the Note and Deed of Trust.  The

16   note has now been bundled with other notes and sold as mortgage-

17   backed securities or otherwise assigned and split from the Trust

18   Deed.  Therefore, ANY person or entity such as **ARGENT MORTGAGE**

19   **COMPANY, LLC** and/or Defendant **BANK OF AMERICA, A NATIONAL**

20   **ASSOCIATION, as successor by merger to LaSalle Bank National**

21   **Association, as trustee for the C-BASS Mortgage Asset-Backed**

22   **Certificate, Series, 2006-CB-7,** who is alleged to be only holding

23

24   the trust deed as a nominee, in accommodation only, has

25   absolutely suffered no default or damage because ONLY the Note

26   interest (real creditor) holder in due course is entitled to

27   payment.

28

20.   The Plaintiff asserts that the foreclosure sale (if any) is void because the trustee had no authority to conduct the sale due to a fatally defective title created by the giving of a deed by someone who lacked legal authority. Additionally, the void nature of the deed derived in some measure from the fact that our [California] courts have adopted a title theory of deed of trusts.  (Given that title to property is held by the trustee under a deed of trust, it is difficult to accept the notion that one who no longer has title could nonetheless convey effective title.

21.   The Plaintiff asserts that the Defendants attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note IS/WAS VOID UNDER CALIFORNIA LAW. The alleged assignment of the deed of trust is a nullity because the    Defendant(s) named had not established that it/they was/were the owner(s) of the promissory note secured by the deed of trust, therefore the Defendant was unable to lawfully continue to assert a claim for payment.

22.   The Plaintiff asserts that the Defendants who have been named, lacked lawful power to conduct a foreclosure sale because they falsely used a trustee that was also allegedly a beneficiary to an unknown mortgaged backed security as a securitized mortgage investor pool, tranche or a special purpose vehicle pool, or other real estate mortgage investment conduit, set up to avoid naming and recording in public records the true and lawful owner(s) of the applicable note.

1    23.    Plaintiff asserts that the Defendants named are not
2  the real parties in/of interest in the note and deed of trust.
3  Under California law, to perfect the transfer of mortgage paper
4  as collateral, the owner must physically deliver the note to the
5  transferee. The note here specifically identified the party to
6  whom it was payable so the note therefore could not and cannot be
7  transferred unless the note is endorsed and sold to another
8  party.
9

10    24.    Plaintiff asserts that the named Defendants failed to
11  record truthful and lawful documents under the laws of the state
12  of California.   The recorded documents that were recorded by the
13  named Defendants were based on recordings oversimplified and
14  misleading "chain of title". The named Defendants perpetrated the
15  *illusion* in their recorded documents by purporting to designate
16  substitute beneficiaries and appoint substitute trustees by
17  falsely identifying themselves as being "officers and/or vice
18  presidents" in order to commence foreclosure proceedings in the
19  capacity of trustee for a mortgage backed security entity (C-BASS
20  Mortgage Asset-Backed Certificate, Series, 2006-CB-7), whereby
21  the actual creditors and/or loan beneficiaries remained hidden
22  from public record.   This convoluted process of falsely using a
23  trustee, as the beneficiary, to an unknown mortgaged backed
24  security (MBS), securitized mortgage investor pool, special
25  purpose vehicle pool (SPV), or other real estate mortgage
26  investment conduit, to avoid naming and recording in public
27  records the true owner of the applicable note, is in violation of
28

COMPLAINT

10

1   the state laws under which MBS trusts were created, and the laws

2   of the State as referred in FACTS herein above. Therefore, the

3   named Defendant(s) acted with malicious intent and reckless

4   disregard in violation of California Government Code §§12650-

5   12656 so as to commit the acts of using the non-judicial

6   foreclosure procedure to foreclose upon Plaintiff with false

7   documents in violation of the laws of the State's False Claims

8   Act.  While recording (1) deeds of trust, (2) mortgages, or any

9   (3) other security instruments, (4) notices of default, (5)

10  notices of substitution of trustee, (6) trustees deed of sale

11  following foreclosure and, (7) recording documents or assignments

12  intended to reflect anything but the truth, and as a result, the

13  named Defendants attempted to avail themselves of protection from

14  subsequent purchasers and lien holders as provided by the

15  California Recording statues.

16  (END OF PLAINTIFF'S FACTS)

17

18

19  **FIRST CAUSE OF ACTION FOR CANCELLATION AND/OR REFORMATION OF**

20  **TRUST DEEDS AND NOTES AGAINST BANK OF AMERICA**

21      25.  Plaintiff repeats and incorporates by reference the

22  allegations appearing in paragraphs 1 to 24 of this Complaint as

23  though set forth herein.

24      26. Plaintiff is informed and believes that Argent Mortgage

25  Company, LLC is the owner or servicer of the note and deed of

26  trust originally issued in favor of Argent. Plaintiff is informed

27  and believes that Litton Loan Servicing is the owner or servicer

28  COMPLAINT

1  of the note and deed of trust originally issued in favor of

2  Argent.

3      27.    Due to the unfair provisions of the original notes as

4  issued by Argent Mortgage Company, Plaintiff requests that these

5  notes be cancelled or modified in whole or in part to reflect the

6  understanding of the Plaintiff with respect to the original

7  transaction. Said modification should take into account the

8  losses that the Plaintiff has suffered as a proximate result of

9  the reckless and unfair business practices of Argent Mortgage

10  Company with respect to the original loans.

11

12      28.    In pursuing non-judicial foreclosure, Defendant BANK OF

13  AMERICA, and those Defendants associated with this Defendant, and

14  each of them by their association with each other as the facts

15  will prove by discovery, received a copy of a "Written Notice of

16  Dispute" contained in a "Qualified Written Request".   Under the

17  law, they were given 30 days to comply to the Federal Fair Debt

18  Collection Practices Act (FDCPA) by answering all of the

19  questions and mail them back to the Plaintiff.   However, these

20  named Defendants failed to do so but unlawfully continued in

21  their efforts to collect on an unverified debt.

22

23      29.    These named Defendants have also refused to comply with

24  Plaintiff's qualified written request under the Real Estate

25  Settlement Procedures Act, 12 U.S.C. Section 2605(e) (RESPA).

26  However, the named Defendants have failed and refused to suspend

27  and/or nullify the sale of the property or to provide verified

28  proof of the right of the true and correct asserted beneficiary

COMPLAINT

12

1  who is the real creditor that would have the right to initiate

2  the foreclosure. Plaintiff alleges that these named Defendants,

3  and each of them, in so acting in this case and with respect to

4  any other mortgage or trust deed instruments, engaged in a

5  pattern and practice of using the non-judicial foreclosure

6  proceedings of this state to foreclose on properties when they

7  intentionally violated the Rosenthal Act (FAIR DEBT COLLECTION

8  PRACTICES ACT), and they do not, in fact, have lawful

9  authorization from the unknown "DOES" Defendants 1 through 20 who

10  are alleged to be the real lawful investors (if any) and

11  creditors and beneficiary(s) or retain a note, or the right to do

12  so, knowing that the property owner (borrower/Plaintiff) affected

13  did not have the knowledge and means to contest the right of the

14  named Defendants to do so.

15  

16      30.   Plaintiff demanded, in writing, that these named

17  Defendants, and each of them through their superior or their

18  employee, provide proof of their right to proceed in foreclosure.

19   This demand was in the form of a 'Qualified Written Request'

20  which included a demand to give the name, address and phone

21  number of the entity or natural person who was in possession of

22  the one original, wet-ink signature, promissory note that was

23  used as the "Corpus"(body) as an asset for the trust to still be

24  valid.  (It should be noted that the property was NOT and could

25  not lawfully be the corpus to the trust since it was only used to

26  secure the payment to pay on the Promissory Note.)  No such proof

27  or equivalent was ever presented to the Plaintiff by these named

COMPLAINT

1  Defendants, thereby their failure to comply made the trust void.

2  (A trust without a corpus is void).

3      31.   Plaintiff also demanded, in writing, for Defendant BANK

4  OF AMERICA, A NATIONAL ASSOCIATION, as trustee for the C-BASS

5  Mortgage Asset-Backed Certificate, Series, 2006-CB-7 to provide a

6  detailed accounting of how the stated amount necessary to be paid

7  to redeem the property from foreclosure had been calculated so

8  that the Plaintiff could adequately know if her right(s) under

9  the law as to Plaintiff's presale right of redemption.  To date,

10  no such proof or its equivalent has been offered.

11

12      32.   The response, if any, of all of the named Defendants,

13  and each of them, has been so inadequate so as to prevent the

14  Plaintiff from determining whether any or all of the charges

15  included in her payoff demand were justified, appropriate, and

16  proper.

17      33.   That Argent Mortgage Company, who was wrongly and

18  unlawfully listed on the Deed of Trust (Plaintiff's Exhibit "B")

19  as the lender, nor Defendant BANK OF AMERICA, N.A., as trustee

20  for the C-BASS Mortgage Asset-Backed Certificate, Series, 2006-

21  CB-7, nor any other Defendant, has or had any remaining interest

22  what-so-ever in the Promissory Note. Since the note was bundled

23  with other notes and sold as mortgage-backed securities or

24  otherwise assigned and split from the deed of trust, it became

25  divorced, or became as a practical matter, unsecured.  ANY person

26  or entity such as Defendant BANK OF AMERICA, N.A., as trustee for

27  the C-BASS Mortgage Asset-Backed Certificate, Series, 2006-CB-7

28

COMPLAINT
14

who was alleged to only hold the deed of trust as a "nominee", (whatever that means), suffered no default or damage because ONLY the note holder is/was entitled to payment.  In fact, QUALITY LOAN SERVICE CORP., as agent for beneficiary, has already admitted that they did not hold any interest what so ever in the Plaintiff's note and/or property.

34.   In all of the wrongful acts alleged in this Complaint, the named Defendants, and each of them by their association together and in concert, all having been notified of their violations of the California Rosenthal Act and have utilized the United States mail in furtherance of their conspiracy to unlawfully collect on a negotiable instrument when they are not entitled under law to do so, their intentional failure to comply with state and federal laws, did commit the crimes of "Mail Fraud" and "Money Laundering" by being unable or not wanting to provide Plaintiff with the location and identity of the person or entity who provided the funds of 'lawful money of the account of the United States of America', for the alleged loan in this case.

35.   As a result thereof, Plaintiff has been damaged in having to search for and hire attorneys before bringing this action to court and to bring this action to enjoin them from selling the threatened subject real property, and have had to and will have to incur attorney fees to stop the wrongful acts of the named Defendants and each of them.  Plaintiff has incurred attorney fees for the purpose of initiating this action and is entitled to reasonable attorney fees.

**SECOND CAUSE OF ACTION FOR QUIET TITLE (AS TO ALL DEFENDANTS)**

36. Plaintiff re-alleges and incorporates by reference the previous allegations appearing in paragraphs 1 through 35 of this Complaint as though set forth herein.

37. Plaintiff is the owner of the subject property per the Deed executed by the Grantor, granting the subject property to the Plaintiff, and recorded in the official records of the County of Los Angeles, State of California.

38. Plaintiff seeks a quiet title against the claims of all of the named Defendants because of their association with one another and the unknown investor/creditor DOE Defendants as follows: Some of the Defendants, who will be named after discovery if possible, hold themselves out as entitled to an interest of ownership of the subject property by and through non-judicial foreclosure, when, in fact, the Plaintiff alleges on information and belief that these Defendants have no right, title, interest, or estate in the subject property, and had no lawful right to conduct a foreclosure sale as either beneficiary or trustee, and that Plaintiff's interest is adverse to Defendants' claims (if any) that they have a right to ownership and to conduct a sale of the subject property. Moreover, because of the intentional violations of State and Federal law, the privilege given to the Defendants to foreclose without due process by the State of California, must be revoked to preserve the Plaintiff's due process, and all actions to foreclose must

1   now be done judicially-if any at all.

2        39.   Plaintiff seeks to quiet title as of March 6, 2006.

3   Plaintiff therefore also seeks a judicial declaration that the

4   title to the subject property is vested in Plaintiff Susan Lomas

5   alone, and that Defendants, and each of them, be declared to have

6   no estate, right, title, or interest in the subject property, and

7   that said Defendants, and each of them, be forever enjoined from

8   asserting from estate, right, title, or interest in the subject

9   property adverse to the Plaintiff herein.

10

11

12       **THIRD CAUSE OF ACTION FOR PREDATORY LENDING PRACTICES**

13       **(AS TO ALL DEFENDANTS ASSOCIATED WITH DEFENDANT BANK OF**

14   **AMERICA, A NATIONAL ASSOCIATION, as trustee for the C-BASS**

15   **Mortgage Asset-Backed Certificate, Series, 2006-CB-7)**

16       40.   Plaintiff re-alleges and incorporates by reference the

17   allegations appearing in paragraphs 1 through 39 of this

18   Complaint as though fully set forth herein.

19

20       41.   Plaintiff is informed and believes, and thereupon

21   alleges, that Defendants, and each of them by their association

22   with one another, have collaborated to engage and did engaged in

23   predatory lending practices with respect to the Plaintiff in

24   violation of the Business and Professions Code Section 17200, and

25   specifics of which are unknown, but which are subject to

26   discovery with respect to which the specifics will be alleged by

27   amendment to this Complaint when ascertained.

28

COMPLAINT

17

1     42.  Plaintiff is informed and believes, and thereupon

2  alleges, that the named Defendants, and each of them by their

3  association with ARGENT MORTGAGE COMPANY LLC, failed to verify or

4  validate Plaintiff's ability to repay the alleged loan, but

5  instead manufactured facts and figures and documents to justify

6  Plaintiff's ability to repay the alleged loan.  Plaintiff alleges

7  upon information and belief that all of the named Defendants, and

8  each of them, engaged in these unlawful actions to facilitate and

9  justify their own greed and need for funds from the Plaintiff,

10  who realistically could not have carried the burden of the loan

11  after the named Defendants, and all of them, manufactured the

12  facts, figures and documents to justify the Plaintiff's ability

13  to repay the alleged loan.

14

15     43.  Plaintiff therefore alleges on information and belief

16  that the named Defendants, proceeded to originate the loan by

17  lowering their own underwriting standards, in order that the

18  Plaintiff would be provided with funding that would be

19  financially unbearable and burdensome, and cause default on said

20  loans and place the Plaintiff in imminent danger of losing her

21  home, (the subject property), to non-judicial foreclosure sale.

22  Further, this clearly appears to be exactly what these named

23  Defendants wanted to happen so that the insurance would pay the

24  unknown Defendant DOE creditors off and leave the 'servicer' or

25  originator and/or Defendant(s) BANK OF AMERICA, N.A, with an

26  unauthorized copy of the note to continue to collect on an

27  unverified debt by misrepresenting the authorization to foreclose

28

1 | on the alleged loan.

2 | 44.   Plaintiff alleges that the named Defendants' unfair

3 | business practices may be remedied by revocation of the power of

4 | attorney given to the trustee to foreclose or by rescission of

5 | the loan (note and deed of trust), and the payment of

6 | compensatory damages to the Plaintiff in the sum to make the

7 | Plaintiff whole.

8 |

9 |

10 | **FOURTH CAUSE OF ACTION FOR DECLARATORY RELIEF**

11 | **(AS TO ALL DEFENDANTS)**

12 | 45.   Plaintiff re-alleges and incorporates by reference the

13 | allegations appearing in paragraphs 1 to 44 of this Complaint as

14 | though fully set forth herein.

15 | 46.   Plaintiff alleges that an actual controversy exists as

16 | to the following issues:

17 | 47.   That any and all loan agreements are void based on the

18 | facts as alleged herein, including, but not limited to, the named

19 | Defendants' violation of disclosure requirements, and under

20 | statutory and common law duties, including the duty to refrain

21 | from fraudulent misrepresentation, unfair debt collection

22 |

23 | practices, and predatory lending practices even though it is the

24 | named Defendants' contention that they have the right to pursue

25 | certain remedies, including, but not limited to, non-judicial

26 | foreclosure.

27 | 48.   That any non-judicial foreclosure sale conducted by the

28 | named Defendants, and each of them because of their association

COMPLAINT

19

1  with one another, is improper, in that these Defendants are not

2  the holders of the original note secured by the subject property,

3  are not the holders of any properly endorsed assignment of the

4  same original note, and have willfully violated the Rosenthal and

5  Fair Debt Collection Act, even though it is the Defendants'

6  contention that they had the right to proceed with a non-judicial

7  foreclosure sale of the subject property.

8       49.   Plaintiff therefore desires a judicial determination of

9  the Plaintiff's rights and duties, and a declaration as to the

10  validity of any loan transaction(s) and the named Defendants'

11  right to proceed with non-judicial foreclosure of the subject

12  property since they have already willfully and intentionally

13  violated the California Rosenthal Act/Fair Debt Collection

14  Practices Act.

15       50.   Plaintiff alleges that a judicial declaration is

16  necessary and appropriate at this time under the circumstances in

17  order that the Plaintiff may ascertain Plaintiff's rights as to

18  the named Defendants' right to proceed with a non-judicial

19  foreclosure sale of the subject property even though they have

20  violated the California Rosenthal Act/Fair Debt Collection

21  Practices Act.

22       51.   Plaintiff alleges that the named Defendants' actions

23  have undermined the Plaintiff's right to the subject property and

24  have interfered, and continue to interfere with the Plaintiff's

25  right of possession of the subject property.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### FIFTH CAUSE OF ACTION FOR INJUNCTIVE RELIEF

#### (AS TO ALL DEFENDANTS)

52.   Plaintiff re-alleges and incorporates by reference those allegations appearing in paragraphs 1 through 50 of this Complaint as though fully set forth herein.

53.   By the actions above and set forth herein, not only because the named Defendants, and each of them by their association with one another, have willfully violated the California Rosenthal Act/Fair Debt Collection Practices Act, but because the named Defendants know they do not have any defense for this violation, and that Defendant BANK OF AMERICA, A NATIONAL ASSOCIATION, as trustee for the C-BASS Mortgage Asset-Backed Certificate, Series, 2006-CB-7 did not have the authority to transfer any interest what-so-ever in the said property so that the Plaintiff clearly has a strong likelihood of prevailing on the merits of the case.  Plaintiff prays that this Court grant a preliminary injunction and temporary restraining order and injunctive relief under Code of Civil Procedure Section 527 and the California Rules of Court, Rule 3.1150, first as to any non-judicial foreclosure or other sale of the subject property, (Plaintiff's home), and second, a permanent injunction precluding all named and DOE Defendants from continuing to engage in the wrongful and unlawful conduct identified herein in the future.

1

**JURY DEMAND**

2

54. Plaintiff demands a trial by jury as required and

3

preserved under the 7th Amendment to the Constitution of the

4

United States of America since the controversy is over the amount

5

of twenty dollars.

6

**PRAYER**

7

WHEREFORE, Plaintiff prays for judgment and order against

8

9 the named Defendants, and each of them because of their

10 association with one another in their wrongful acts and against

11 the unknown DOE Defendant investors/creditors since it appears

12 that they have built a 'firewall' to preclude their identity to

13 the Plaintiff and has now clouded the title as to each and every

14 cause of action, jointly and severally, as follows:

15 On the First Cause of Action for Violation of the California

16 Rosenthal Act: That the actions of named Defendants be

17 determined to be violations of California Business and

18 Professions Code Section 17200, et seq, Rosenthal Fair Debt

19 Collection Practices Act including, but not limited to, Civil

20 Code Section 1788(e) through (f), and the Federal Fair Debt

21 Collection Practices Act, 15 U.S.C. Sections 1692, et seq., and

22 Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.

23 Sections 2601 through 2617; for Actual damages according to

24 proof; Compensatory damages according to proof; Special damages

25 according to proof and Punitive damages according to proof.

26

27 On the Second Cause of Action for Quiet Title: For a judgment

28 that Plaintiff is the owner and fee simple owner of the property

COMPLAINT

1   and that all of the named and unknown DOE Defendants have no

2   interest in the property adverse to her.

3   On Third Cause of Action for Predatory Lending Practices: That

4   the actions of the named Defendants be determined to be Predatory

5   Lending Practices against the Plaintiff, for Compensatory damages

6   according to proof; Special damages according to proof; Punitive

7   damages according to proof; For actual damages to be proved at

8   trial; For additional damages up to $100,000.00; and for attorney

9   fees according to proof;

10  On Fourth Cause of Action:  That the actions of the named

11  Defendants, and each of them, be determined to be unfair and

12  deceptive business practices in violation of California and

13  Federal law; That Defendants have no interest in the property

14  adverse to Plaintiffs'; That the foreclosure of Plaintiffs' home

15  by the Defendants, and each of them, be deemed illegal and void

16  and same be permanently enjoined; That an order issue setting

17  aside any such sale of the subject property by the Defendants,

18  and each of them, and declaring any such sale to be null and void

19  and of no force and effect; That an order issue that any

20  purchaser from the Defendants, and each of them, deliver their

21  alleged deed (and note) to the subject property to the Court, and

22  that any such deed be canceled.

23  On Fifth Cause of Action: That a temporary injunction, a

24  preliminary injunction, and a permanent injunction issue,

25  enjoining the Defendants, and each of them, including all persons

26  acting under, for, or in concert with the Defendants, from

COMPLAINT

23

selling the subject property or attempting to sell it or causing

1    it to be sold, by foreclosure action or otherwise.

2    On All Causes of Actions:  For reasonable costs and

3    disbursements in this action; and that such other and further

4    relief the Court may deem just and proper be awarded as well.

5

6    Dated: September 9, 2010          _____

7                                     Susan Lomas

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
24

**VERIFICATION**

I, Susan Lomas, Plaintiff in this action, have read each and every allegation of the foregoing complaint to quiet title and verify each and every allegation of the claim for quiet title as true under penalty of perjury except as to those matters that we have alleged on information and belief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 9th day of September, 2010.

_____
Susan Lomas

1

**INDEX OF EXHIBITS** - *FROM ARGENT MORTGAGE*

2

3  **Exhibit A** - The Deed of Trust executed by Michael A. Heredia as borrower for the note executed

4  on March 15, 2006, recorded in the Recorder's Office of County of Los Angeles on March 24,

5  2006, and identified as Record No. 06 0634453, the "Deed of Trust")..............................5

6  **Exhibit B** - The Corporation Assignment of Deed of Trust dated March 24, 2006, and recorded in

7  the Recorder's Office of The County of Los Angeles on July 20, 2007 and identified as Record

8  No. 20071718562............................................................................................24

9  **Exhibit C** - The Notice of Default and Election to Sell Under Deed of Trust recorded in the

10  Recorder's Office of The County of Los Angeles on March 10, 2009 and identified as

11  Record No. 20090337279..................................................................................26

12  **Exhibit D** - The Notice of Trustee's Sale under the Deed of Trust recorded in the Recorder's

13  Office of The County of Los Angeles on June 11, 2009, and identified as

14  Record No. 20090877297..................................................................................28

15  **Exhibit E** - The Trustee's Deed Upon Sale recorded in the Recorder's Office of The County of

16  Los Angeles on December 17, 2009, and identified as Recorded No.

17  20091921081.................................................................................................30

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 5438172v1

4

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEMURRER TO PLAINTIFFS' COMPLAINT**

EXHIBIT A

**NORTH AMERICAN TITLE COMPANY**

3/24/06

Recording Requested By:
Argent Mortgage Company, LLC

Return To:

Argent Mortgage Company, LLC
C/O Nationwide Title Clearing,
2100 Alt 19 North
Palm Harbor, FL 34683

06 0634453

Prepared By:Argent Mortgage Company, LLC
Anthony Minyard
One City Boulevard West
Orange, CA 92868

156377-63

————[Space Above This Line For Recording Data]————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 13, 2006
together with all Riders to this document.
(B) "Borrower" is MICHAEL A. HEREDIA, A Married Man, As His Sole and Separate
Property

Borrower is the trustor under this Security Instrument.
(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

0094286994 - 9502

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005 7/01

-6(CA) (0005)

Page 1 of 15         Initials: MH·

VMP MORTGAGE FORMS - (800)621-7291

03/13/2006 2:28:57 PM

d06-01ca (05/2005)Rev.01

EXHIBIT A

3/24/06

Lender's address is 3 Park Plaza - 10th Floor   Irvine, CA 92614

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is Town and Country Title Services, Inc.

(E) "Note" means the promissory note signed by Borrower and dated March 13, 2006
The Note states that Borrower owes Lender **five hundred sixty thousand five hundred
and 00/100**                                                                Dollars
(U.S. $560,500.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than April 1, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

0094286994 - 9502
Initials: M.H.

VMP®-6(CA) (0005)          Page 2 of 15    03/13/2006 2:28:57    Form 3005  1/01

D06-02CA (05/2005)Rev.01

**06 0634453**

EXHIBIT A                                                                         P.6

3/24/06

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County                    of              LOS ANGELES                :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 8370-035-088                            which currently has the address of
2528 KENDALL STREET                                                            [Street]
LA VERNE                                              [City], California 91750        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0094286994 - 9502
Initials: M.H.

-6(CA) (0005)                    Page 3 of 15    03/13/2006 2:28:57 PM  Form 3005  1/01

(05/2005)Rev.01

06  0634453

EXHIBIT A                                                          P.7

3/24/06

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

0094286994 - 9502
Initials: M.L.
-6(CA) (0005)    Page 4 of 16    03/13/2006 2:28:57    Form 3005    1/01

D06-04CA (05/2005)Rev.01

06 0634453

EXHIBIT A

P.8

3/24/06

6

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

0094286994 - 9502

Initials:

-6(CA) (0005)          Page 5 of 15      03/13/2006 2:28:57     Form 3005   1/01

D06-05CA (05/2005)Rev.01

06 0634453

EXHIBIT A                                                        P.9

3124106

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

0094286994 - 9502
Initials: M.H.
Form 3005  3/99
Page 6 of 15    03/13/2006  2:28:57


-6(CA) (9908).02

D06-06CA (05/2005)Rev.01

06 0634453

EXHIBIT A

P.10

3/24/00

8

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6(CA) (0005)

Page 7 of 15

Initials: _MtL_

03/13/2006  2:28:57

0094286994 - 9502

Form 3005   1/01

D06-07CA (05/2005)Rev.01

**06 0634453**

3/24/06

9

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

0094286994 - 9502
Initials: MAH

-6(CA) (0005)                     Page 8 of 15     03/13/2006  2:28:57     Form 3005   1/01

D06-08CA (05/2005)Rev.01

**06  0634453**

EXHIBIT A                                                                    P.12

3/24/06

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

D06-09CA (05/2005)Rev.01

06 0634453

3/24/06

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0094286994 - 9502
Initials: _MA._

-6(CA) (0005)          Page 10 of 15    03/13/2006 2:28:57    Form 3005  1/01

D06-10CA (05/2005)Rev.01

06  0634453

3/24/06

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

0094286994 - 9502
Initials: _MH_

Page 11 of 15    03/13/2006 2:28:57    Form 3005  1/01

-6(CA) (0005)

06  0634453

D06-11CA (05/2005)Rev.01

3/24/06

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6(CA) (0005)
®

0094286994 - 9502
Initials: M.H.

Page 12 of 15    03/13/2006 2:28:57    Form 3005   1/01

D06-12CA (05/2005)Rev.01

06 0684453

EXHIBIT A                                                        P.16

3/24/06

14

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6(CA) (0005)

VMP®

0094286994 - 9502
Initials: M·H·

Page 13 of 15      03/13/2006 2:28:57      Form 3005 1/01

D06-13CA (05/2005)Rev.01

06 0634453

3/24/06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                      MICHAEL A. HEREDIA              -Borrower


_____        _____ (Seal)
                                                                      -Borrower


_____ (Seal)  _____ (Seal)
                   -Borrower                                          -Borrower


_____ (Seal)  _____ (Seal)
                   -Borrower                                          -Borrower


_____ (Seal)  _____ (Seal)
                   -Borrower                                          -Borrower


0094286994 - 9502

 -6(CA) (0005)            Page 14 of 15  03/13/2006 2:28:57 PM Form 3005  1/01

(05/2005)Rev.01                    06  0634453

3/24/06

16

State of California

County of Los Angeles } ss:

On 3-15-2006 before me, Gail Vargas, Notary Public
_____Day/Month/Year_____                      Notary Public

personally appeared

Michael A. Heredia

_____

_____

~~personally known to me~~ (or proven to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument

Witness my hand and official seal.

_____ (Seal)
Notary Public


GAIL VARGAS
Comm. # 1592406
NOTARY PUBLIC - CALIFORNIA
Los Angeles County
My Comm. Expires July 2, 2009



Page 15 of 15                    0094286994 - 9502

03/13/2006 2:28:57 PM

06  0634453

400-15CA (05/2005)Rev.01

EXHIBIT A                                        P.19

3/24/06

EXHIBIT "A"
(LEGAL DESCRIPTION)

LOT 105 OF TRACT NO. 29007, IN THE CITY OF LA VERNE, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 715 PAGES 87 AND 88 OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY.

06 0634453

3/24/06

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 13th day of March , 2006   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Argent Mortgage Company, LLC (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2528 KENDALL STREET, LA VERNE, CA 91750
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of  8.950 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first day of April, 2008 , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials   M+b

Loan Number: 0094286994 - 9502

610-1 (Rev 1/01)                    Page 1 of 3

03/13/2006 2:28:57 PM

## 06  0634453

3/24/06

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding six percentage points ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date at my new interest rate in substantially equal payments in accordance with the amortization set forth in Sections 3(B) amd 3(C) of the Note.  The result of this calculation will be the new amount of monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than  **10.950% or less than 8.950%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  One( **1.000 %**) from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 14.950)% or less than 8.950)%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

initials___M-H.___

Loan Number: 0094286994 - 9502

03/13/2006 2:28:57 PM

**06  0634453**

EXHIBIT A                                                        P.22

3/24/06

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)    _____ (Seal)
Borrower MICHAEL A. HEREDIA         Borrower

_____ (Seal)    _____ (Seal)
Borrower                            Borrower

Loan Number: 0094286994 - 9502

610-3 (Rev 1/01)                Page 3 of 3

03/13/2006 2:28:57 PM

06 0634453

EXHIBIT A                                                    P.23

EXHIBIT B

st American title Insurance Company
1100 Superior Avenue, Suite 200
Cleveland, Ohio 44114

07/20/07

20071718562

*A̲S̲S̲I̲G̲N̲M̲E̲N̲T̲*

When recorded mail to:
First American Title Lenders Advantage
Loss Mitigation Title Services - LMTS
1100 Superior Ave. Ste 200
Cleveland, OH 44114
Order: 3605495 Ln: 15843261
Attn: National Recordings 1120

NAME  Argent Mortgage Company, LLC
ADDRESS  3 Park Plaza, 19th Floor
CITY &  Irvine, CA 92614
STATE

**2006-CB7**

Loan Number  0094286994 - 9502

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to_____

~~LaSalle Bank National Association, as trustee~~
~~for the C-BASS Mortgage Loan Asset-Backed~~     135 South LaSalle St, Suite 1625, Chicago, IL  60603
~~Certificates, Series 2006-CB7,without recourse~~

all beneficial interest under that certain Deed of Trust dated  03/13/06      , executed by
MICHAEL A. HEREDIA, A Married Man, As His Sole and Separate Property
Addr-2528 Kendall Street, La Verne Ca 91750                              , Trustor

to  Town and Country Title Services, Inc., Trustee
and recorded as Instrument No.                On 3-24-6 in book        , page        , of Official Records in the County
Recorder's office of      LOS ANGELES      County, California, describing land therein as:
Instr-20060634453      Amt. 560,500.00

"EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF"

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued under said Deed of Trust.
APN. 8390-035-088

Argent Mortgage Company, LLC

Dated  03/24/2006

JESSICA OTT - AGENT

State of  California                    )
County of    Orange                    ) ss.
                                       )
                                       )
On  03/24/2006  before me,  MARTHA LONDON
personally appeared  JESSICA OTT
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that  by his/her/their signature(s) on the instrument the person(s) or the entity upon
behalf of which is the person(s) acted,  executed the instrument

FOR NOTARIAL SEAL OR STAMP

WITNESS my hand and official seal.

                                    (Seal)

MARTHA LONDON

MARTHA LONDON
Commission # 1554166
Notary Public - California
Orange County
My Comm. Expires Feb 20, 2009

Title Order No. 1566377 63          Escrow No.  2876 DH

750-CA1  (12/2005) Rev.03

EXHIBIT B

EXHIBIT C

**LSI Title Company (CA)**

03/10/2009

|||||||||||||||||||||||||||||||||||
*20090337279*

$2)$

Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

090164368

TS No.: CA-09-256610-BL          Loan No.: 15843261          Space above this line for Recorder's use

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is **$18,621.28** as of 3/9/2009 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Litton Loan Servicing LP
C/O Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711**

$21$

EXHIBIT C

P.26

3

TS No.: CA-09-256610-BL
Loan No.: 15843261
**Notice of Default and Election To Sell Under Deed of Trust**

    If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

    NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 3/13/2006, executed by MICHAEL A. HEREDIA, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY, as Trustor, to secure certain obligations in favor of ARGENT MORTGAGE COMPANY, LLC, as beneficiary, recorded 3/24/2006, as Instrument No. 2006-0634453, in Book xxx, Page xxx of Official Records in the Office of the Recorder of LOS ANGELES County, California describing land therein: **as more fully described In said Deed of Trust.**

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $560,500.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of principal and interest plus impounds and advances which became due on 12/1/2008 plus amounts that are due or may become due for the following: late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement.

    That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

    The Beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2923.5.

Dated: 3/9/2009           **Quality Loan Service Corp., AS AGENT FOR BENEFICIARY**
                      BY: LSI Title Company, as Agent

                                              Merrlyn L. Aguas

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

EXHIBIT D

Recording requested by:
Quality Loan Service Corp.

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

06/11/2009

*20090877297*

090164368

TS # CA-09-256610-BL          Loan # 15843261          SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/13/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):      **MICHAEL A. HEREDIA, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY**
Recorded:       3/24/2006 as Instrument No. 2006-0634453 in book xxx, page xxx of Official Records in the office of the Recorder of LOS ANGELES County, California;

Date of Sale:    **7/6/2009 at 10:30 AM**
Place of Sale:   **At the West side of the Los Angeles County Courthouse, directly facing Norwalk Blvd., 12720 Norwalk Blvd., Norwalk, CA 90650**
Amount of unpaid balance and other charges: **$587,246.03**
The purported property address is:      **2528 Kendall Street
                                         La Verne, CA 91750**
Assessors Parcel No. 8370-035-088

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

**If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**
Date: 6/11/2009                Quality Loan Service Corp.
                               2141 5th Avenue
                               San Diego, CA 92101
                               619-645-7711 For NON SALE information only
                               Sale Line: 714-730-2727 or Login to: www.fidelityasap.com
                               Reinstatement Line: (800) 247-9727

Quality Loan Service Corp. by: Andrew Basom, as Authorized Agent.

13

EXHIBIT D                                                                    P.28

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

EXHIBIT D

Trustee's Deed Upon Sale
2 | Page

to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b

Default occurred as set forth in a Notice of Breach and Election to Sell which was recorded in the office of the Recorder of said County.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Breach and Election to Sell or the personal delivery of the copy of the Notice of Breach and Election to Sell and the posting and publication of copies of the Notice of Sale have been complied with.

Said property was sold by said Trustee at public auction on **12/9/2009** at the place named in the Notice of Sale, in the County of **LOS ANGELES,** California, in which the property is situated.  Grantee, being the highest bidder at such sale, became the purchaser of said property and paid therefore to said trustee the amount being **$362,500.00** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

Date: **12/10/2009**                    **QUALITY LOAN SERVICE CORPORATION**

                              By: _____

                                   Karla Sanchez, Assistant Secretary

State of California    )
County of San Diego)

On _**12.14.09**_ before me, **Michelle Nguyen** a notary public, personally appeared **Karla Sanchez,** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
              Michelle Nguyen

> MICHELLE NGUYEN
> COMM. #1665032
> NOTARY PUBLIC ● CALIFORNIA
> SAN DIEGO COUNTY
> Comm. Exp. MAY 8, 2010

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

> "This instrument is being recorded as an
> ACCOMMODATION ONLY, with no
> Representation as to its effect upon title"

EXHIBIT E

*1*

Trustee's Deed Upon Sale
I    P a g e

Recording requested by



12/17/2009

*20091921081*

When recorded mail to

Litton Loan Servicing LP
4828 Loop Central Drive
Houston, TX 77081

Forward tax statements to the address given above

Space above this line for recorders use

TS # CA-09-256610-BL          Order # 090164368-CA-MAI

# Trustee's Deed Upon Sale

A P N  8370-035-088                          Transfer Tax: **$0.00**

The undersigned grantor declares.
The grantee herein **IS** the foreclosing beneficiary
The amount of the unpaid debt together with costs was.     **$621,075.85**
The amount paid by the grantee at the trustee sale was      **$362,500.00**
The documentary transfer tax is.                           None
Said property is in the City of.  La Verne, County of LOS ANGELES

**QUALITY LOAN SERVICE CORPORATION** , as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**Bank of America, National Association as successor by merger to LaSalle Bank National Association, as Trustee for the C-BASS Mortgage Loan Asset-Backed Certificates, Series 2006-CB7**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of  LOS ANGELES, State of California, described as follows
**LOT 105 OF TRACT NO. 29007, IN THE CITY OF LA VERNE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 715 PAGES 87 AND 88 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by   **MICHAEL A. HEREDIA, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY**, as trustor, dated 3/13/2006,  and recorded on 3/24/2006 as instrument number **2006-0634453**, in Book **xxx**, Page **xxx** of Official Records in the office of the Recorder of  **LOS ANGELES**, California, under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed trustee, default having occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on 3/10/2009, instrument no **09-337279**, Book , Page , of Official records  Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election

Trustee's Deed Upon Sale
2   P a g e

to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified
mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b

Default occurred as set forth in a Notice of Breach and Election to Sell which was recorded in the office of
the Recorder of said County

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice
of Breach and Election to Sell or the personal delivery of the copy of the Notice of Breach and Election to
Sell and the posting and publication of copies of the Notice of Sale have been complied with

Said property was sold by said Trustee at public auction on **12/9/2009** at the place named in the Notice of
Sale, in the County of **LOS ANGELES,** California, in which the property is situated   Grantee, being the
highest bidder at such sale, became the purchaser of said property and paid therefore to said trustee the
amount being **$362,500.00** in lawful money of the United States, or by the satisfaction, pro tanto, of the
obligations then secured by said Deed of Trust

Date: **12/10/2009**                    **QUALITY LOAN SERVICE CORPORATION**

                            By·

                            **Karla Sanchez, Assistant Secretary**

State of California   )
County of San Diego)

On **12·14·09** before me, **Michelle Nguyen** a notary public, personally appeared **Karla Sanchez**,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct

WITNESS my hand and official seal.

Signature _____ (Seal)
            **Michelle Nguyen**

MICHELLE NGUYEN
COMM #1665032
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Comm. Exp. MAY 8, 2010

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE
USED FOR THAT PURPOSE

"This instrument is being recorded as an
ACCOMMODATION ONLY, with no
Representation as to its effect upon title"



**This page is part of your document - DO NOT DISCARD**



## 20091921081

Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**12/17/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 12.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 12.00 |



**L E A D S H E E T**

200912170110005

00001656569

002449101

**SEQ:
19**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t35

SUSAN LOMAS, M.A., MBA
in Pro Per
2528 Kendall Street
La Verne, CA 91750
E-Mail: Souxsie@prodigy.net
Telephone: (323) 533-5242
Fax: (310) 734-6252

ORIGINAL FILED

AUG 1 2 2010

LOS ANGELES
SUPERIOR COURT

THE SUPERIOR COURT FOR THE STATE OF CALIFORNIA

IN AND FOR LOS ANGELES COUNTY

POMONA COURTHOUSE SOUTH

| | |
|---|---|
| SUSAN LOMAS, an individual; SUSAN LOMAS, Trustee of the Michael A. Heredia and Susan Lomas Joint Living Trust Dated January 22, 2008 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| vs. | |
| BANK OF AMERICA, A NATIONAL ASSOCIATION, as successor by merger to La Salle Bank National Association, as trustee for the Certificate C-BASS Mortgage Asset-Backed Certificate, Series, 2006-CB-7and; DOES 1 - 20, inclusive | |
| Defendants. | |

Case No. KC059379 'O'

COMPLAINT FOR:

(1) FOR REFORMATION OF NOTES AND DEEDS OF TRUST; (2) QUIET TITLE; (3) PREDATORY LENDING PRACTICES; (4) DECLARATORY RELIEF; (5) INJUNCTIVE RELIEF; (6) REQUEST FOR AN EVIDENTIARY HEARING and; (7) JURY DEMANDED PER THE 7TH AMENDMENT.

CASE ASSIGNED FOR
ALL PURPOSES TO
JUDGE PETER J. MEEKA
DEPT. O

1

EXHIBIT OF COMPLAINT IN STATE COURT

## PROOF OF SERVICE

I am a citizen of the United States of America; I am over 18 years of age; my business address is 425 N. 11'' Street Avenue, Upland, CA 91786.  I am employed in the county of San Bernardino where this mailing occurred.

On 9/10/2010, I served the following document(s):

### 1. COMPLAINT

By placing a true copy thereof enclosed in a sealed envelope and served in the manner described below to each of the parties herein and addressed as follows:

Bank of America, NA
c/o  Corp. Agent (Agents for Service of Process)
Margaret Wilson
818 W. 7'' Street
Los Angeles, CA 90017

**XX**    BY MAIL: I caused such envelop(s) to be delivered by hand to the addressee(s) designated. It is deposited within the United States Postal Service on that same day in the ordinary course of business.

___ BY HAND DELIVERY: I caused such envelope to be delivered by hand to the addressee designated.

_____ BY FEDERAL EXPRESS: I caused such envelope to be delivered via Federal Express to the addressee designated.

___ BY FACIMILE:  I caused said document(s) to be transmitted to the telephone numbers of the addressee designated.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

September 10,  2010
Date                                                    Lorraine Aguirre

RECEIVED
SEP 10 2010
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

B104 (FORM 104) (08/07)

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |
|---|---|

| **PLAINTIFFS** SUSAN LOMAS | **DEFENDANTS** BANK OF AMERICA, NA AS TRUSTEE FOR THE C-BASS 2006 CB-7 AND; DOES 1-20 INCLUSIVE, MORTGAGE ASSET-BACKED CERTIFICATES, SERIES |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) SUSAN LOMAS     (323) 533-5242 2528 Kendall Street La Verne, CA 97150 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only) ✓Debtor     □ U.S. Trustee/Bankruptcy Admin □ Creditor     □ Other □ Trustee | **PARTY** (Check One Box Only) □ Debtor     □ U.S. Trustee/Bankruptcy Admin ✓Creditor     □ Other □ Trustee ☞ |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
REFORMATION OF NOTES & DEEDS OF TRUST; QUIET TITLE; PREDATORY LENDING PRACTICES; DECLATORY RELIEF; REQUEST FOR AN EVIDENTIARY HEARING; INJUNCTIVE RELIEF AND JURY DEMANDED PER THE 7TH AMENDMENT.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- [3] 11-Recovery of money/property - §542 turnover of property
- [ ] 12-Recovery of money/property - §547 preference
- [2] 13-Recovery of money/property - §548 fraudulent transfer
- [ ] 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- [ ] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- [ ] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- [ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- [ ] 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- [ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- [4] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- [ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- [ ] 61-Dischargeability - §523(a)(5), domestic support
- [ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
- [ ] 63-Dischargeability - §523(a)(8), student loan
- [ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- [ ] 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- [1] 71-Injunctive relief – imposition of stay
- [ ] 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- [ ] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- [5] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- [ ] 01-Determination of removed claim or cause

**Other**
- [ ] SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- [ ] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ 1,770,000 USD, PLUS COSTS |
| Other Relief Sought     IMPOSITION OF STAY FOR STAY OF WRIT OF POSSESSION OF PROPERTY. | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR   SUSAN LOMAS | | BANKRUPTCY CASE NO.   2:10-BK-38296-ER | |
| DISTRICT IN WHICH CASE IS PENDING   CENTRAL | | DIVISION OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) *Susan Lomas* | | | |
| DATE   09-09-2010 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)   SUSAN LOMAS | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number        FOR COURT USE ONLY

Susan Lomas
2528 Kendall St.
La Verne, CA 91750
(323) 533-5242



RECEIVED

SEP 10 2010

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____
        Deputy Clerk

*Attorney for Plaintiff*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re:

SUSAN LOMAS

                                                          Debtor.

CHAPTER 7

CASE NUMBER 2:10-BK-38296-ER

ADVERSARY NUMBER

SUSAN LOMAS                                Plaintiff(s),

vs.

Bank of America, NA as Trustee for C-BASS, et a Defendant(s).

*(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)*

## SUMMONS AND NOTICE OF STATUS CONFERENCE

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint. You must also send a copy of your written response to the party shown in the upper left-hand corner of this page. Unless you have filed in duplicate and served a responsive pleading by _____, the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

**Hearing Date:**            **Time:**            **Courtroom:**            **Floor:**

❑  **255 East Temple Street, Los Angeles**        ❑  **411 West Fourth Street, Santa Ana**

❑  **21041 Burbank Boulevard, Woodland Hills**    ❑  **1415 State Street, Santa Barbara**

❑  **3420 Twelfth Street, Riverside**

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference. Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval. The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: _____

**KATHLEEN J. CAMPBELL**
**Clerk of Court**

By: _____
            *Deputy Clerk*

_____

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*February 2010 (COA-SA)*

# F 7004-1

Summons and Notice of Status Conference - *Page 2*                **F 7004-1**

| In re | (SHORT TITLE) | CASE NO.: |
|-------|---------------|-----------|
|       | Debtor(s). |           |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document described as _____
_____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____  _____    _____
*Date*                          *Type Name*                         *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*February 2010 (COA-SA)*                                                              **F 7004-1**